16-16505, United States v. Utsick. We have Mr. Kluge here for the appellant, Mr. Kalan here for the U.S. Attorney for the Appellee. Mr. Kluge, you've got ten minutes. You've reserved five. Thank you, Your Honor. Good morning. The case is unusual. It's an extradition case in which there was considerable litigation about what the meaning of this particular extradition consisted of. The government actually sought to clarify in Brazil what it was that the Brazilian authorities were extraditing on. And because it's a wire fraud, I'm sorry, a mail fraud case, it had both a criminal offense, or actually nine criminal offenses charged in the indictment, and it had the scheme language that goes with the fraud statute. And what the Brazilian authorities, to the defense's mind, made clear was that they were only permitting punishment for the period beginning in December of 2005 and not for the pre-December scheme period of the indictment. They used very unusually specific language for that. And unlike the ordinary specialty issue that you would have in a treaty matter, the language that they used here was specific that there was to be no specific increase at all, and that the first conduct for which the defendant could be punished or prosecuted was the December 2005 conduct. So that became a point of litigation throughout the proceedings which lasted maybe two years in the district court. And ultimately, the day that the jury was to be selected, the defense attorneys and the government said to the court, perhaps if you can make a definitive ruling for us on whether evidence relating to pre-execution conduct will be admitted, and then the government also raised a sentencing concern that we might be able to do something with the case. And I guess the implication was that they would all convince the defendant to enter a plea. So the district court then makes certain rulings based on standard treaty-based decisions, not necessarily specific to the language of this extradition, that rule especially does not preclude admission of evidence, and generally speaking that because a defendant being punished even under the sentencing guidelines is being punished for the offense of conviction rather than for uncharged conduct, even though uncharged conduct is being considered, that the rule especially does not bar consideration of that relevant conduct. At that point, the district court then, it's unclear exactly how it's, what is conveyed to the district court. The next thing we see is that the district court is telling the defendant you're here for a change of plea. And this plea agreement then is again, to my mind, unique in that whereas most plea agreements have a waiver of jurisdictional limit, a non-waiver of rather, of jurisdictional limitations, the imposition of sentence handwritten into this plea agreement. Can I ask you just a preliminary question, Mr. Kluge? Does the to the voluntariness and knowing entry of the plea itself, or are you making that, this argument about the extradition and the issue of considering these facts as relevant conduct going to both? Your Honor, I sort of see it as a teeter-totter, as an either-or in this context. And I think the best way to look at it is, the crispest way for me to look at it is focusing even on the restitution part of the sentence. Because I think that The reason I ask the question is to the extent that you say it bears upon whether the plea was entered knowingly and voluntarily, it seems to me one of the problems with the argument that you're making in that respect is that the district judge could not have been clearer. Your client knew, everybody knew what her view was, and she made it abundantly clear that she could use evidence that predated counts two through nine for purposes of sentence insofar as he entered a plea of guilty on something that occurred afterwards. So he was fully aware of that. So I was having trouble understanding how that had any traction, that I think that that ruling cuts both ways when you also consider the fact that the plea agreement contains this special reservation of rights to argue that to the contrary, essentially, of what the district court judge is saying. So I think that that's part of the tension in the case. The district court says, basically citing standard law, that as a matter of treaty law, specialty doesn't prohibit me from considering relevant conduct, even though it's not part of the specialty transfer. The defendant then, having been made aware of what the judge is doing, then understands, there's no point in me, particularly with regard to the evidentiary ruling, there's no point in me going to trial. So I'm pleading guilty, but I'm preserving fully my rights under the treaty. It's not saying because you have ruled. Let me ask you the question this way, to the extent that the argument is going front and center to the sentence itself. We said in Garcia, it was vacated for other reasons, but we said the following in Garcia, and I want you to tell me why it isn't right, what we said in Garcia. We wrote that the distinction is thus drawn between proof of other crimes as a matter germane to the determination of punishment for the extradited crime, and proof of other crimes in order to exact punishment for those other crimes. Only the latter course is forbidden by the doctrine of speciality. What's wrong? Why is that error? We may not be bound by it, but tell me why it isn't persuasive. It's certainly persuasive. The distinction here is that we're not arguing, in other words, there are very little discussion about the rule of specialty in my case. If we were writing on the rule of specialty, I would assume that the court would go with that prior, I don't know whether you call it dicta or whatever at this point, and hold that you can consider uncharged or unextradited conduct. However, it is the very specific language used in narrowing the terms of extradition here, and this was on the government's request for clarification from the Brazilian authorities, as I understand that, that uses language that we quote, that excluded from possible autonomous imposition of sentence or specific increase for those acts. So I think the question before the court is, is a sentencing guideline increase based on that conduct, that non-extradited conduct, a specific increase for those acts as to the guideline question. However, I think it presents a much clearer issue as to restitution. Can I ask you just a quick question before we get there, because I might be a little bit confused. If it's not the doctrine of specialty, which I assume is some sort of federal common law rule, but a rule of federal domestic common law, what domestic rule would require a U.S. court to give deference to the Brazilian extradition judgment? If it's not the rule of specialty, like what rule of U.S. law? Maybe that's a stupid question. It's a common law of extradition decisions. All of the extradition decisions, even the one most recently cited in supplemental authority by the government, which has a good background on it, relates that absent a conflicting interpretation by the extraditing authorities, and the judiciary says one thing, the executive branch says another thing, then you do have to follow the terms of the extradition. That is sort of a full faith and credit sort of a thing. You give credit to the extradition. It happens most frequently where countries will not extradite unless the government will agree not to put somebody to death. Again, to me, it's much clearer here, even in the sentencing guideline issue, which I believe is a novel issue because of the very specific language here. With regard to the restitution, I think it's much clearer. Restitution is based on proof of additional crimes. In other words, there is no jurisdiction to order restitution absent proof of additional crimes. It's not a relevant conduct statute. As to restitution, it seems very clear that if the terms of extradition are given effect, then the restitution judgment cannot include all of this 10-year series of crimes. That would have been clearly beyond the scope of the extradition order. Let me just ask a quick question that's pretty fundamental before we run out of time. I wanted to make certain that you're conceding as to whether the guilty plea was voluntary and whether your client was competent. They're subject to a plain error review. Yes. Okay. Thank you. Three seconds left, so I'll sit down. Okay. Beautiful. Thank you. You've got your full rebuttal time remaining. Mr. Kahlon? Is it Kahlon or Cullen? Kullen. Thank you very much. Fifteen minutes. May it please the Court, Jonathan Kahlon on behalf of the United States. Council is arguing that the treaty language here is somehow different and wants to specifically focus on the language, so I want to start there because, first of all, the language is pretty standard, and I think if we look at the exact language, it shows why the general principles of the rule of speciality that this Court had discussed in Garcia and recognized in other unpublished decisions even later, really are standard here and show why the punishment for count seven includes all the relevant conduct that Mr. Utzick stipulated to, including the loss amounts and restitution amounts in his plea agreement. So I'm going to turn first to the language of the treaty because that's very important. It does not refer to conduct. It refers to trial and punishment for offenses. This is Article 5. Article 5 is the article that he cited in his arguments to the District Court. Article 21 contains the general rule of speciality, and it refers to, this is Article 21, a person extradited may not be tried or punished for any crime or offense committed other than the ones that give rise to the request. So there were seven counts, I'm sorry, eight counts that were extradited. Count one was not because that count one was before the limitation date. He could not be tried or punished for count one. He can be tried or punished for all of the other counts. In his plea agreement, he specified in paragraphs seven and four what the relevant conduct was resulting from this offense, count seven. So the only question is, does the Brazil treaty or the rule of speciality as applied under U.S. law somehow say you cannot look at the relevant conduct that Mr. Utzick stipulated to as to count seven? And it doesn't. So can I ask you a quick question? From Mr. Klug's argument, I took him in the argument today to be sort of walking, not walking away from, I don't want to put words in his mouth, but deemphasizing the rule of specialty or speciality, and instead invoking some other sort of adjacent federal common law rule. But am I correct in thinking that we've got to have some tether to domestic law that sort of operationalizes the Brazilian extradition treaty? It doesn't just sort of exist in the ether. Somehow domestic law has to sort of pay deference to that through some doctrine, specialty or otherwise. Is that right? Yes, Your Honor. And if it's not specialty, what is it? Well, I believe it is the rule of specialty, Your Honor. The treaty is what controls his right to, is the issue on appeal. Does his stipulated relevant conduct— I just want to be sure that I understand what you're saying in response to the question my colleague asked you. If speciality is not the basis, is there anything in American common law that would prevent the district court from considering the conduct, the earlier conduct, as relevant with regard to fashioning a sentence on count seven? Not that I'm aware of, Your Honor, and I don't believe counsel has raised any in his briefs. This is relevant conduct, which all the time, just like the dismissed accounts, the dismissed accounts. Relevant conduct can overlap between various counts and sometimes include counts like here that were dismissed. The relevant conduct is really the same for all. We dismissed seven other extradited accounts, and just as the relevant—you can say, well, we can't apply the relevant conduct. Those counts were dismissed. That argument wouldn't hold water. I mean, you couldn't come here and say that the government breached the plea agreement, for example, because the relevant conduct for count seven might also have constituted relevant conduct for the other dismissed counts. The same holds for count one, which was barred by the limitations and by the extradition order. Now, how I see the interplay between the rule of speciality and the treaty, which is the United States agreed to the treaty, of course, with Brazil. The treaty contains the language that you can only be extradited for counts that aren't barred by limitations. That's count five. And article—I'm sorry, article five. Article 21 contains standard language rule of speciality. This court has recognized in Garcia, and as we all acknowledge, Garcia is not binding, but we recognize its reasoning, as other circuits have followed the same reasoning, that the rule of speciality, how you apply that language from the Brazil treaty, is a question of U.S. law. And under U.S. law, it's clear that rule of speciality does not bar the use of relevant conduct. Let me ask the question this way. This isn't quite the way Mr. Clu fashioned it, but help me with it. Does not the treaty, the terms of the extradition, bar a federal court from enhancing punishment based upon this earlier conduct? No, and I want to be clear about why. Okay, so why don't you really go right and drill down on that issue, because at least for me, that seems to me to be the heart of the argument. And I agree with Mr. Clu that the language here is what's important. We must focus on what the language of the treaty says and what it doesn't say, because I think it's been a little mischaracterized. The word conduct does not appear anywhere in the treaty. The treaty—this is article five and article 21—says, article five, extradition shall not be granted when the legal proceedings or the enforcement of the penalty for the crime or offense has become barred by limitations. You cannot extradite when punishment for the offense has been barred by limitations. So we can't punish you for count one. Article 21, a person extradited may not be tried or punished for any crime or offense committed other than the one that describes the request. The focus of the treaty is the crime or offense. The judgment of the Brazil Supreme Court that applied the treaty, likewise—and this is document entry 43-1 at page two—the motion shall not be granted for such offense. The extradition order—I'm sorry, that was the extradition order, docket entry 245-2, page three—the motion shall not be granted for such offense. The Brazil Supreme Court judgment, likewise, uses the language of offense. The only place where the word conduct comes in—it's what Mr. Clue cites in his brief—excuse me, Your Honor—the only place where the word conduct comes in is in the explanation given by Judge Toffoli in denying the third motion for rehearing—I'm sorry, the third request for amendment of judgment. That's the document that he's been citing in his brief. It's at docket entry 245-1, page nine. And if you actually look at the full quote of what Judge Toffoli says, he says, the conduct narrated in the indictment as being practiced between 413 and 414, that's what you can't punish him for. Now, the conduct narrated in the indictment as being practiced—that's count one. Those are the dates specifically charged as a count one, and the Brazilian courts throughout the various judgments and orders refer to the counts by the date that they're listed of the wire transfers. So for the conduct narrated in the indictment as being practiced between 413 and 414, we can't punish him. That's count one. We all agree. We can't punish him for count one, just like we can't punish him for the counts that we dismissed. We can punish him for count seven. That's all the Brazil treaty language says. That's all the Brazil court judgments say. Nothing says we can't punish him for conduct predating the date of the limitations bar for trial and punishment for offenses. This court's application of the rule of specialities has been clear. Other courts have recognized the same ruling as this court in the more recent unpublished decision. Following Garcia's language, Mejia Duarte recognized other circuits follow the same application. The American law's application of the rule of speciality is that you can look at relevant conduct for other offenses for the punishment for the extradited offense. And that's all that's being done here. As to the voluntariness of the stipulations that he made in paragraph seven and paragraph four of the plea agreement, we trust the court to see—it's very clear from the plea colloquy. I think I understood counsel to be withdrawing or somewhat receding from the voluntariness argument, but the plea colloquy speaks for itself. This was a standard plea colloquy. After the court ruled, as Your Honor recognized, the parties said, let's go outside and discuss this. They negotiated a plea, presented it to the court. The court went through all of the terms, including specifically—let's look at the plea language of paragraph seven. The relevant value and actual probable intended loss under the guideline sections resulting from the offense committed in this case is $207 million and change. Quote, paragraph four, defendant agrees to pay restitution in the amount of $169 million and change. So you don't need to prove any other offenses to justify this restitution order. The relevant conduct that Mr. Utsak specified, quote, resulting from the offense committed, count seven, is $207 million. Defendant agrees to pay restitution in the amount of $169 million. I believe some amounts had already been recovered. So you don't need to prove any other offense. You don't need to try or punish him for any other offense. All we're looking at is his stipulated relevant conduct, number of victims, intended loss amounts, agreed restitution for the offense committed, count seven, which was one of the offenses. Unless the court has any further questions, this court should reaffirm the Garcia rationale and affirm the agreed amounts that Mr. Utsak stipulated to for the punishment for count seven. Okay. Very well. Thank you so much, Mr. Colon. Mr. Kluge, you've got five minutes remaining. Mr. Kluge, let me ask you a question at the outset before you go back into this issue of extradition. I read your brief a couple of times and then I just picked it up and I was looking at it again to see what's properly before this court. In your brief, I took you to be arguing that the guilty plea itself was no good because the plea was fatally defective. Those were your words in your argument. You said it violated 11B1 of the federal rules because it elicited admissions amounting to a guilty plea prior to advising him of his right to remain silent, et cetera. Then you go on to argue that the plea wasn't knowing and voluntary because, among other things, his mental health issues were unresolved, et cetera. Then I heard you say in response to a question that Judge Covington put to you that that's not the argument you're making here. I just want to be crystal clear. Have you abandoned the argument that the Rule 11 colloquy was no good, that the plea was not knowing and voluntary on these grounds, that it was procedurally defective because of how she advised him about the right to counsel? Are you receding from the argument that among the factors that undermine the voluntariness of the plea was, quote, that his mental health was unresolved? That's fine if that's gone, but I just want to be clear that I understand your position because that wasn't the position in the blue brief. I'm basically trying to walk a line with plain error. What I'm saying is that I can't, I don't think I can meet the plain error standard unless the court agrees with me. No, I understand. I'm not arguing that. I'm just, is that before me or are you abandoning that? It is before you, but I don't believe, it only was to prongs one, like prong one or prong two even. I'm saying that I can't win plain error unless you agree with me that the treatment of his plea at sentencing as if he pled guilty to things that weren't even subject to extradition would convert in light of the other procedural violations. I think that it meets the plain error standard. Not that those errors don't exist, but I've read this court's plain error decisions and guilty pleas and you have to have something that goes to core substance here and that's the core substance of what I'm talking about because when we get to the sentencing and the restitution, all that really governs what the district court decides because the government produces no evidence of, you know, to show loss in these amounts. Their whole argument is we've established these offenses that therefore warrant restitution and at sentencing the government asks for, violates whatever agreement there was in terms of the plea agreement. The government says no we want 172 million dollars and so the whole restitution thing was opened up fully. The district court asked the defense, you know, do you contest, yes we fully contest these things and all the extradition issues were litigated on the merits. So they were resolved essentially by the district court by saying no you pled guilty and so you admitted all this offense conduct. We're saying A, if you look at the plea he doesn't admit to any offense conduct at all other than the December 2005 conduct, but beyond that he's not trying to. He's trying to preserve his then you basically you write into the district court writes into or the government writes into the plea agreement the word treaty meaning this whole treaty process and then essentially it's pulled out at sentencing even though we're trying to preserve the arguments and the defendant actually suffers for it at sentencing because his sentence is increased because the government says you're not abiding by the plea agreement. You don't have the same understanding of the plea agreement that we do. So I'm not abandoning them. I'm conceding the impossible in terms of this tall climb up the mountain on those and I think the government still has not wrestled with the restitution issue. This is not, Garcia does not address restitution. There's no authority that would suggest that you can order restitution for non-extradited crimes. It's not a relevant conduct issue. It's not an evidentiary issue. It's not a weighing everything in the balance issue as in Garcia, as in Bo. Let me just sort of follow up on that and see if you can help me with what the argument is grounded in. If it's not grounded in the doctrine of speciality, what is the argument grounded in? Why can't an American court consider this as relevant conduct in sentencing on an extradited crime? If not for speciality. I think again the term adjacent is probably the term I would use. It's adjacent to speciality, but it's adjacent to every part of the enforceability of the doctrine. Every concept of American law is that we will not get any more extraditions from anybody if we don't follow what they say when they put in their extradition order. So I mean it's a fundamental, all the Supreme Court cases that are decided in the government's most recent supplemental authority, every case whether it's speciality or non-basinitum or whatever doctrine applies, it's a fundamental principle is if you want another extradition from Brazil, you should follow the extradition that they sent you this time. And the courts understand that. And the deference is given. When there are vague areas about what they're actually doing, we don't defer to the courts to decide. Let me ask the question this way. What is there in the text of article 5 or article 21 specifically that would bar the district court from doing what she did? Textually, what is there in the language that says she can't do what she did here? What there is in that language is a need for clarification as to what is meant in that language in relation to this case. We filed a document, it's docket 245, that goes very expressly into the Brazilian interpretation of exactly what they mean by the language in article 5 in relation to this extradition. And it could not be more precise. There is no way you can read that and say, and you can sentence him for additional crimes in order to give him restitution. You could possibly, I'm not saying, I think it's a close call on the sentencing guideline issue, but on the restitution issue, it's a completely different matter. It's not simply a weighing of additional evidence, it's rejecting the extradition that Brazil was kind enough to give the United States. Thank you very much. Very well, thank you both. Well argued on both sides.